1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

AIMEE RAY, et al,

Case No. 2:23-cv-00465-TMC

9

Plaintiff,

ORDER GRANTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE
PLEADINGS

10

v.

11

WASHINGTON STATE DEPARTMENT

12

OF HEALTH AND HUMAN SERVICES, a

13

government agency, WASHINGTON STATE

14

DEPARTMENT OF SOCIAL AND

15

HEALTH SERVICES, a government agency,

16

WENDY LONG, an individual, SONYA

17

SANDERS, an individual,

18

Defendant.

19

20

**I.     INTRODUCTION**

21

    This case arises out of Plaintiffs' requests for exemptions and accommodations from

22

Defendant Washington State Department of Social and Health Services' ("DSHS")

23

implementation of the COVID-19 vaccine mandate for all state employees. Plaintiffs sued

24

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS - 1

1
2
Defendant DSHS, along with DSHS employees Wendy Long and Sonya Sanders, alleging that

its application of the vaccine mandate violated federal and state law.[1]

3
4
5
6
7
8
9
Before the Court is Defendants' motion for judgment on the pleadings. Dkt. 53. Having

reviewed the parties' briefing and the relevant record, the Court GRANTS the motion. The

federal claims against DSHS, against Long and Sanders in their official capacities, and the

Takings Clause claim against all Defendants are DISMISSED WITH PREJUDICE. The

remaining federal claims are DISMISSED WITHOUT PREJUDICE. The Court declines

supplemental jurisdiction over the state claims and those are also DISMISSED WITHOUT

PREJUDICE.

10
11
12
13
14
15
16
17
At oral argument, Plaintiffs requested leave to file a motion to amend their deficient

complaint. *See* Dkt. 72. Because leave to amend "is to be applied with extreme liberality," the

Court GRANTS Plaintiffs' request to file a motion to amend. *See Bacon v. Woodward*, 104 F.4th

744, 753 (9th Cir. 2024) (citation modified). Plaintiffs must file their motion and their proposed

amended complaint no later than July 31, 2025. The proposed amended complaint must include

both a clean copy and a redline version showing changes from the second amended complaint. If

the proposed amendments do not cure the deficiencies explained in the Order below, the Court

will deny the motion to amend as futile, dismiss the federal claims in the operative complaint

18
19
20
21
22
23
24

---

[1] Plaintiff also names Defendant "Washington State Department of Health and Human Services" in its operative complaint. Dkt. 26. Defendants point out that this is a "purported state agency that does not exist." Dkt. 53 at 7. Apart from one passing reference to its alleged involvement in the unlawful actions, the Complaint does not otherwise refer to the "Washington State Department of Health and Human Services." *See* Dkt. 26 § 264. Plaintiffs appear to conflate the agency with the Washington State Department of Social and Health Services or "DSHS." *See* Dkt. 61 at 2 ("The Employees are former employees of Defendant Washington State Department of Health and Human Services ('DSHS' or the 'Department'). Thus, the Court construes Plaintiffs' references to the "Washington State Department of Health and Human Services" as pertaining to the "Washington State Department of Social and Health Services," or "DSHS."

1    with prejudice, continue to decline supplemental jurisdiction over the state claims, and enter

2    judgment in favor of Defendants.

3                                    **II.    BACKGROUND**

4           In August 2021, amid the COVID-19 pandemic and a wave of infections caused by the

5    "delta variant" of the virus, Washington State Governor Jay Inslee issued Proclamation 21-14[2]

6    (with amendments, "the Proclamation"). Dkt. 26 ¶ 102; Dkt. 54-1 at 5–27. The Proclamation

7    required all state agency workers be fully vaccinated against the COVID-19 virus by October 18,

8    2021. *Id.* The Proclamation allowed for certain exemptions that required employers, including

9    DSHS, to evaluate medical and religious exemption requests and provide reasonable

10   accommodations consistent with federal and state anti-discrimination statutes. Dkt. 26 ¶ 103;

11   Dkt. 54-1 at 8–9. The Proclamation also noted that "State Agencies are not required to provide

12   such accommodations if they would cause undue hardship." Dkt. 54-1 at 8–9.

13          Plaintiffs are 37 former DSHS employees[3] who sought a religious and/or medical

14   exemption[4] and accommodations from Washington's COVID-19 vaccine mandate. Dkt. 26 ¶¶ 1,

15   6–46. DSHS granted exemptions to nearly every Plaintiff that applied for one. *See id.* But the

16   agency did not grant Plaintiffs' accommodation requests to continue in their existing positions.

17   *See id.; see also id.* ¶ 56. The decision emails, sent by Defendant Long, stated that the "only

18

19   _____

20   [2] The Court can consider a document not physically attached to the complaint if the parties do not
     contest its authenticity and the plaintiff necessarily relies on it. *Lee v. City of Los Angeles*, 250
     F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*,
21   307 F.3d 1119 (9th Cir. 2002).

22   [3] The Court granted the voluntary dismissal of four Plaintiffs since the filing of Plaintiffs' Second
     Amended Complaint. Dkt. 46.

23   [4] Plaintiff Legrand Jones does not plead that he applied for an exemption like the other Plaintiffs.
     *See* Dkt. 26 ¶ 28. Instead, he states that he "asserted his privacy rights and refused the
24   vaccination." *Id.* at 21 n.2.

1
2
3
4
5
6

reasonable accommodation [DSHS] can offer is the possibility of a reassignment," and outlined a process in which Plaintiffs could request a reassignment. *Id.* ¶ 119; *see, e.g.*, Dkt. 24 at 2–4. Only one Plaintiff, Lynette King, accepted a reassignment, although she ultimately resigned. Dkt. 26 ¶¶ 31, 51 n.1. Three more Plaintiffs were "forced to prematurely retire." *Id.* ¶ 51 n.1. All other Plaintiffs claim DSHS "wrongly terminated" their employment for failure to comply with the vaccine mandate. *Id.* ¶ 51.

7
8
9
10
11
12
13
14

Defendant Long was the Senior Director of the Human Resources Division at DSHS at the time Plaintiffs were terminated. *Id.* ¶ 4. Plaintiffs allege that the exemption and accommodation letters sent by Long to Plaintiffs were "form letters" and that if "Defendants had performed a legitimate accommodation process, Plaintiffs would not have been terminated." *Id.* ¶¶ 119, 193. The other allegation in which Plaintiffs identify a specific action taken by Long is the claim she "violated the privacy of 271 employees by disseminating their names in an open email and identifying them as individuals who were unvaccinated and part of a 'COVID Mandate Reassignment Team[.]'" *Id.* ¶ 198.

15
16
17
18
19
20
21
22
23
24

Defendant Sanders was the Regional Administrator of the Aging and Long-Term Care Administration of DSHS at the time Plaintiffs were terminated. *Id.* ¶ 5. Several Plaintiffs were employees of the Aging and Long-Term Care Administration before their termination. *Id.* ¶¶ 11, 17–18, 23–24, 28, 31, 35–38, 40–41. The Complaint identifies Sanders as being "in charge of authorizing accommodations[.]" *Id.* ¶ 94. Plaintiffs state Sanders sent "sent numerous 'Midweek Funnies' emails to employees and allege that they were "inflammatory, insulting, and shaming to the unvaccinated." *Id.*; *see* Dkt. 26-11 (email sent before vaccines were available containing cartoons about social distancing, masking, and Zoom meetings). Plaintiffs identify no other personal participation by Sanders in the alleged unlawful acts against existing Plaintiffs. *See generally id.*

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS - 4

1    On March 27, 2023, Plaintiffs filed suit against Defendants, asserting thirteen causes of

2    action under the U.S. Constitution, the Washington State Constitution, and Washington law.

3    Dkt. 1 ¶¶ 240–358. Plaintiffs filed a First Amended Complaint on September 26, 2023, naming

4    more Plaintiffs. Dkt. 19. Plaintiffs filed a Second Amended Complaint on May 2, 2024 naming

5    one additional Plaintiff and adding a fourteenth cause of action, a retaliation claim under

6    Washington law. Dkt. 26. Except for the retaliation claim specifying that Long and Sanders (the

7    "Individual Defendants") are being sued for acts "in their individual capacities," *id.* ¶ 372,

8    Plaintiffs do not identify whether Long and Sanders are being sued in their official or individual

9    capacities for the remaining claims.

10    Plaintiffs seek damages for back and front pay, loss of benefits now and in the future,

11    consequential economic damages, and emotional distress, as well as attorney's fees. *Id.* ¶¶ 374–

12    75. Plaintiffs do not seek injunctive relief. *See id.*

13    On March 28, 2025, Defendants moved the Court for judgment on the pleadings under

14    Federal Rule of Civil Procedure 12(c). Dkt. 53. After the parties stipulated to a motion to extend

15    deadlines, Dkt. 60, Plaintiffs responded on May 7, 2025, Dkt. 61. In their response, Plaintiffs

16    requested leave to amend their operative complaint to "mend any defects" presented by

17    Defendants, and attached a proposed Third Amended Complaint. *Id.* at 5; Dkt. 61-1. Defendants

18    filed a reply on May 16, 2025. Dkt. 62. Defendants' reply brief addressed both the operative

19    complaint and Plaintiffs' proposed Third Amended Complaint, arguing that dismissal should be

20    granted with prejudice because amendment would be futile. *See id*.

21    The Court held oral argument on July 16, 2025. Dkt. 72. At oral argument, Plaintiffs

22    conceded that their proposed Third Amended Complaint was an "incorrect filing" that they

23    wished to withdraw. *See id.* Plaintiffs represented that they would not oppose Defendants' instant

24    Motion if dismissal of the operative complaint was without prejudice and the Court granted them

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS - 5

leave to file a new motion to amend, which would explain how a new proposed Third Amended

Complaint could "cure the deficiencies" Defendants raised in their briefing. *See id.* The Motion

is fully briefed and ripe for review.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of

Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a

cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation

omitted).

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early

enough not to delay trial—a party may move for judgment on the pleadings." The legal standard

for Rule 12(c) is "substantially identical" to the standard for a motion to dismiss under

Rule 12(b)(6) because under both rules, "a court must determine whether the facts alleged in the

complaint, taken as true, entitle the plaintiff to a legal remedy."[5] *Chavez v. United States*, 683

F.3d 1102, 1108 (9th Cir. 2012) (quotation marks and citation omitted).

---

[5] Motions to dismiss and motions for judgment on the pleadings differ in only two respects: "(1) the timing (a motion for judgment on the pleadings is usually brought *after* an answer has been filed, whereas a motion to dismiss is typically brought *before* an answer is filed), and (2) the party bringing the motion (a motion to dismiss may be brought only by the party against whom the claim for relief is made, usually the defendant, whereas a motion for judgment on the pleadings may be brought by any party)." *Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F. Supp. 2d 898, 902–03 (S.D. Cal. 2004), *opinion clarified sub nom. Sprint Tel. PCS, L.P. v. County of San Diego*, No. 03-CV-1398-K(LAB), 2004 WL 859333 (S.D. Cal. Jan. 23, 2004) (internal citation omitted).

1

2

3

4

5

6

7

8

9

10

As with a motion to dismiss, to survive a motion for judgment on the pleadings, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

11

12

13

14

15

16

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

17

18

19

20

21

22

23

Finally, in a case alleging the same claims against multiple defendants, there must be specific allegations explaining what each defendant allegedly did wrong, rather than general allegations asserted against them as a group. *Trusov v. Oregon Health & Sci. Univ.*, No. 3:23-CV-77-SI, 2023 WL 6147251, at *2 (D. Or. Sept. 20, 2023); *see In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole.") (citation modified).

24

# IV.    DISCUSSION

## A.    The Court dismisses all federal claims.

Plaintiffs allege violations of the Free Exercise Clause (Claim 10), Dkt. 26 ¶¶ 336-43; the Due Process Clause of the Fifth and Fourteenth Amendments (Claim 3), *id.* ¶¶ 277-86; the Contracts Clause (Claim 7), *id.* ¶¶ 311–20; and the Takings Clause of the Fifth Amendment (Claim 13), *id.* ¶¶ 358–64. Although Plaintiffs' complaint does not specify that they are bringing their federal constitutional claims under 42 U.S.C. § 1983, *see id.*, "a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983," *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) (citing cases); *see also* Dkt. 61 at 9 (asserting in their response brief that "Plaintiffs have stated claims for relief under § 1983 against the Individual Defendants in their personal capacities").

To state a claim for relief under Section 1983, a plaintiff must show: (1) that he or she suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the causation requirement of Section 1983, a plaintiff must demonstrate that a defendant caused the alleged deprivation by doing an affirmative act, participating in another's affirmative act, or failing to perform an act which he or she was legally required to do. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citation omitted).

A Section 1983 "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under Section 1983. *Lemire v. California Dep't of*

1  *Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citation omitted). A supervisor may,

2  however, be held liable under Section 1983 "if he or she was personally involved in the

3  constitutional deprivation or a sufficient causal connection exists between the supervisor's

4  unlawful conduct and the constitutional violation." *Id.* (quoting *Lolly v. Cnty. of Orange*, 351

5  F.3d 410, 418 (9th Cir. 2003)).

6          1.      *Plaintiffs have abandoned their Takings Clause claim and all federal claims*
                   *against Defendants in their official capacities.*

7

8          Plaintiffs concede that the federal constitutional claims against DSHS (a state agency that

9  is not a "person" under Section 1983) and against Long and Sanders in their official capacities

10 should be dismissed. Dkt. 61 at 9. Plaintiffs also seek dismissal of their Takings Clause claim to

11 "narrow the issues going forward." *Id.* at 15. Accordingly, the Court DISMISSES these claims

12 with prejudice.

           2.      *Plaintiffs fail to adequately plead how Long and Sanders personally participated*
13                 *in alleged constitutional violations.*

14         The Court dismisses the Free Exercise, Due Process, and Contracts Clause claims against

15 the Individual Defendants in their personal capacities because Plaintiffs do not adequately

16 identify how Long and Sanders personally participated in violating their rights. At a threshold

17 level, to find a defendant individually liable under Section 1983, "the defendant must have

18 played an integral role in and been personally responsible for the deprivation." *Knight v. Brown*,

19 797 F. Supp. 2d 1107, 1136 (W.D. Wash. 2011), *aff'd*, 485 F. App'x 183 (9th Cir. 2012)

20 (citation modified) (citing *Jones v. Williams*, 297 F.3d 930, 934–35 (9th Cir. 2002)). Where, as

21 here, Plaintiffs allege the same claims against multiple defendants, "there must be specific

22 allegations explaining what each defendant allegedly did wrong, rather than general allegations

23

24

asserted against them as a group." *Zimmerman v. PeaceHealth*, 701 F. Supp. 3d 1099, 1119 (W.D. Wash. 2023) (collecting cases).

Plaintiffs do not sufficiently allege that either Long or Sanders was "personally responsible" for the alleged constitutional violations. *See Knight*, 797 F. Supp. 2d at 1136. Among the asserted constitutional claims, Plaintiffs make no individualized allegations against Long and Sanders and refer only generally to "Defendants' actions." *See* Dkt. 26 ¶¶ 277–86; 311–20; 336–43. By "simply lump[ing] all defendants together," Plaintiffs make it "impossible for the Court to draw the necessary connection between the actions or omissions" of Long and Sanders themselves. *See Evans v. Sherman*, No. 119CV00226DADBAMPC, 2020 WL 1923176, at *1 (E.D. Cal. Apr. 21, 2020)*, report and recommendation adopted*, 2021 WL 136394 (E.D. Cal. Jan. 14, 2021). Nor do the Complaint's generalized allegations allow the Court to conduct an "inquiry into causation" under Section 1983 that is "individualized and focus[ed] on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 633 (citing cases).

When Plaintiffs do identify actions taken by Long or Sanders in the Complaint, the allegations are sparse. *See, e.g.*, Dkt. 26 ¶¶ 94, 119. Plaintiffs' basis for the constitutional claims against Long are the emails she sent granting exemptions from the vaccine mandate but denying accommodations except for possible reassignment. *See* Dkt. 26 ¶ 119; *see also* Dkt. 61 at 9 ("[I]t is clear that Defendant Long personally sent them the notice that they were nominally exempt but would not be accommodated, on specious grounds, and that she referred them to a process which had no substance."). But Plaintiffs allege no conduct by Long that suggests her actions deviated from her obligation to implement the Proclamation or explains what she actually did that violated the Constitution. *See generally* Dkt. 26; *see, e.g.*, *Rolovich v. Washington State Univ.*, No. 2:22-CV-0319-TOR, 2023 WL 3733894, at *6 (E.D. Wash. May 30, 2023), *judgment*

*entered*, 2023 WL 5120279 (E.D. Wash. July 27, 2023) (dismissing Free Exercise claim where supervisor's communications to plaintiff "were in accord with the Proclamation"). And even if the Court found that emails sent from Long alone showed personal participation in some rights violation, the factual allegations likely relate to Plaintiffs' failure-to-accommodate state-law claim, not their federal constitutional claims. *See, e.g.*, Dkt. 26 ¶¶ 126 ("This 'all in one' *pro forma* acceptance of exemption but predetermined denial of accommodation, without any dialogue with the individual Plaintiff employees, rendered the accommodation process a sham and completely meaningless.").

Plaintiffs' allegations against Sanders are even thinner and appear to be based solely on her supervisory role to some of the Plaintiffs. *See* Dkt. 26 ¶ 94 ("Defendant Sanders . . . was in charge of authorizing accommodations[.]"). Despite this lack of specificity, Plaintiffs implore that it is not a "stretch to infer that Defendants Long and Sanders were responsible for setting the harmful policy." Dkt. 61 at 9. But such inferences are not reasonable. Supervisors are not vicariously liable under Section 1983 for actions taken under their leadership in the absence of personal participation. *See Lemire*, 726 F.3d at 1074. To state a Section 1983 claim for supervisory liability, Plaintiffs must allege that Long and Sanders were personally involved in the constitutional violation or that their unlawful conduct caused the constitutional violation. *See Jackson*, 268 F.3d at 653. Even drawing all reasonable inferences in favor of Plaintiffs, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled[.]" *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also id.* (holding that "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss") (citations omitted).

Nor can Plaintiffs rely on speculation about future discovery to show personal participation in the alleged constitutional deprivations. *See* Dkt. 61 at 9 ("In advance of

1  discovery, it is of course difficult for an outsider to know exactly how much of a role Defendants

2  Long and Sanders had in the Employees' wrongful terminations."). As *Iqbal* and *Twombly*

3  directed, Plaintiffs cannot proceed to discovery where, as here, they have not alleged facts giving

4  rise to a plausible claim for relief. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 556–60.

5  The Court thus DISMISSES the federal claims against Long and Sanders in their individual

6  capacities.

7          3.       *Long and Sanders are also protected by qualified immunity.*

8          Even if Plaintiffs adequately alleged personal participation, their claims would fail

9  because the Individual Defendants would be protected by qualified immunity. Qualified

10 immunity is a defense that protects "government officials . . . from liability for civil damages

11 insofar as their conduct does not violate clearly established statutory or constitutional rights of

12 which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)

13 (citations omitted). The plaintiff carries the burden to show that the defendant (1) "violated a

14 federal statutory or constitutional right" and (2) "the unlawfulness of their conduct was clearly

15 established at that time." *Moore v. Garnand*, 83 F.4th 743, 750 (9th Cir. 2023) (citation

16 modified). The Court may analyze these elements in any order "in light of the circumstances in

17 the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the Court

18 need only consider whether Defendants' conduct violated a clearly established right. *See Moore*,

19 83 F.4th at 750; *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616

20 F.3d 963, 969 (9th Cir. 2010) ("[W]e may begin the qualified immunity analysis by considering

21 whether there is a violation of clearly established law without determining whether a

22 constitutional violation occurred.").

23          "To determine whether a constitutional right has been clearly established for qualified

24 immunity purposes," the Court "must survey the legal landscape and examine those cases that

are most like the instant case." *Krainski*, 616 F.3d at 970 (quoting *Trevino v. Gates*, 99 F.3d 911, 917 (9th Cir. 1996)) (citations omitted). While the qualified immunity doctrine does not "require a case directly on point" to show that a right is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted). The inquiry is also time-specific, requiring the Court to consider whether the right was clearly established "at the time of the alleged violation." *Moran v. State of Wash.*, 147 F.3d 839, 844 (9th Cir. 1998) (citations omitted).

This Court has already concluded that Defendant Long was protected by qualified immunity for similar acts or omissions in the alleged wrongful termination of a DSHS employee. In *Strandquist v. Washington State Department of Social & Health Services*, a former DSHS employee raised Free Exercise Clause, Contracts Clause, and substantive and procedural Due Process Clause claims against Long in her personal capacity. No. 3:23-CV-05071-TMC, 2024 WL 4645146, at *7 (W.D. Wash. Oct. 31, 2024). "Strandquist's main allegation is that Long helped implement DSHS's vaccine mandate and is responsible for denying him a religious accommodation." *Id.* This Court found that Long was entitled to qualified immunity against each constitutional claim. *Id.* The Court "survey[ed] the legal landscape," *Krainski*, 616 F.3d at 970, on the plaintiff's Free Exercise, Due Process, and Contracts Clause claims and concluded that he "fail[ed] to establish that Long's actions violated any clearly established constitutional right." *Strandquist* 2024 WL 4645146, at *7–8.[6]

---

[6] Plaintiffs' Complaint appears to only allege a violation of their procedural due process rights. *See* Dkt. 26 ¶¶ 277–86. In their Response, Plaintiffs, for the first time, assert that their substantive due process rights were violated. *See* Dkt. 61 at 14 ("Employees had a clearly-established substantive due process right to refuse even immediately life-saving medical treatment[.]"). Because qualified immunity would still apply to Plaintiffs' substantive due process claim even if adequately pled, *see supra* Sec. IV.A.3, the Court's analysis remains the same.

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS - 13

Plaintiffs do not allege distinguishing facts nor offer arguments on why the Court should reach a different outcome on Long's entitlement to qualified immunity for the same constitutional claims arising out of substantially similar acts. *See, e.g.*, Dkt. 61 at 11 ("The issue is . . . whether applying [the Proclamation's] mandate in a discriminatory way against religious employees, and to stifle their free exercise of religious belief opposed to the vaccination, and without respect for the due process rights of any of the Employees, violates clearly established rights of which a reasonable official should have known."). And beyond this Court's Order, "[d]istrict courts have routinely held that officials are entitled to qualified immunity in similar challenges to public health orders because they were facing an unprecedented global pandemic, for which there was little if any clearly established precedent." *Strandquist*, 2024 WL 4645146, at \*7 (citation modified) (collecting cases). As in *Strandquist*, "[a]t the time Long implemented DSHS's vaccine mandate in September 2021, there was no Supreme Court or Ninth Circuit precedent which put her on notice that either the mandate or DSHS's method of implementing it was unconstitutional." *Id.* For the same reasons, Sanders is also entitled to qualified immunity. *See id.* Thus, even if Plaintiffs had adequately pled personal participation of Long and Sanders, the Court would find that the Individual Defendants were entitled to qualified immunity and DISMISS all federal claims.[7]

**B.      The Court grants Plaintiffs leave to move to amend their complaint.**

At oral argument, Plaintiffs conceded deficiencies in their operative Second Amended Complaint. *See* Dkt. 72. They also admitted that their proposed Third Amended Complaint, which they attached to their Response, was an "incorrect filing" that they wished to withdraw. *See id.*; Dkt. 61-1. Plaintiffs represented that they would not oppose dismissal of the federal

---

[7] Plaintiffs' Contracts Clause claim also fails for the independent reason that they do not cite any authority to support the claim in their Response brief. *See* Dkt. 61 at 14–15.

claims without prejudice if the Court granted their request to file a formal motion for leave to amend their complaint to "cure the deficiencies" raised. *See* Dkt. 72. Defendants opposed Plaintiffs' request, arguing that nothing they have briefed to date, nor cited as support at oral argument, would result in their federal claims surviving a motion for judgment on the pleadings. *See id.*

The Court GRANTS Plaintiffs' request to file a motion for leave to amend their operative complaint. When assessing the propriety of leave to amend, courts consider five factors: bad faith, undue delay, prejudice to the opposing party, futility, and prior amendment. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). In the Ninth Circuit, "[l]eave to amend shall be freely given when justice so requires, and this policy is to be applied with extreme liberality." *Bacon* 104 F.4th at 753 (quoting *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014)). Although Plaintiffs have previously amended their complaint, those amendments were unopposed and primarily concerned the addition of more Plaintiffs and one additional claim. *See* Dkt. 19, 26. While Plaintiffs concede that they erred in filing their Third Amended Complaint, there is currently no evidence of bad faith, undue delay, or prejudice to Defendants in granting leave to file the motion. *See Corinthian Colls.*, 655 F.3d at 995. Finally, while the Court expressed skepticism at oral argument that Plaintiffs' amendments could change the qualified immunity analysis, leave to amend "is to be applied with extreme liberality," *Bacon*, 104 F.4th at 753, and no prejudice will result from allowing Plaintiffs to brief the issue and have a final opportunity to demonstrate that they can allege a violation of clearly established constitutional rights.

## V. CONCLUSION

For the reasons explained above, the Court GRANTS the motion for judgment on the pleadings. Dkt. 53. The federal claims against DSHS, against Long and Sanders in their official

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS - 15

capacities, and the Takings Clause claim against all Defendants are DISMISSED WITH PREJUDICE.

The remaining federal claims are DISMISSED WITHOUT PREJUDICE. The Court declines supplemental jurisdiction over the state law claims and those claims are also DISMISSED WITHOUT PREJUDICE.

Because leave to amend "is to be applied with extreme liberality," the Court GRANTS Plaintiffs' request to file a motion to amend their complaint. *See Bacon*, 104 F.4th at 753. Plaintiffs must file their motion and their proposed amended complaint no later than July 31, 2025. Plaintiffs shall note the motion to amend as a 21-day motion. LCR 7(d)(3). The proposed amended complaint must include both a clean copy and a redline version showing changes from the second amended complaint.

If the proposed amendments do not cure the deficiencies explained in this Order, the Court will deny the motion to amend as futile, dismiss the federal claims in the operative complaint with prejudice, continue to decline supplemental jurisdiction over the state claims, and enter judgment in favor of Defendants.

All other remaining case deadlines, including the trial date, are STRICKEN pending a ruling on Plaintiffs' forthcoming motion for leave to amend. Should the motion be granted, the Court will enter a new case scheduling order.

Dated this 17th day of July, 2025.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS - 16